UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEANETTE KINNE,

    Plaintiff,                                    Civil Action No. 06-12011

v.                                                HON. NANCY G. EDMUNDS
                                                   U.S. District Judge
                                                   HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL            U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

       Plaintiff Jeanette Kinne brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Plaintiff's Motion for Summary Judgment be DENIED, and Defendant's Motion for Summary Judgment be GRANTED.

## PROCEDURAL HISTORY

       On May 2, 2003, Plaintiff filed an application for Disability Insurance Benefits (DIB) alleging an onset date of May 8, 2002 (Tr. 50-52). After the Social Security Administration ("SSA") denied her request on September 24, 2003, she made a timely request for an

-1-

administrative hearing, held on June 22, 2005 in Birch Run, Michigan before Administrative Law Judge (ALJ) Richard Wurdeman (Tr. 236, 238). Plaintiff, represented by attorney Mikel Lupisella, testified, as did Vocational Expert ("VE") Mary Williams (Tr. 240-249, 250-252). On August 12, 2005, ALJ Wurdeman found that although Plaintiff was unable to perform her past relevant work, she retained the capacity to perform a limited range of light work, found in significant numbers in the national economy (Tr. 25). On April 5, 2006, the Appeals Council denied review (Tr. 4-6). Plaintiff filed for judicial review of the final decision on May 2, 2006.

## **BACKGROUND FACTS**

Plaintiff, born July 25, 1952 was age 53 when the ALJ issued his decision (Tr. 25, 50). She completed high school and worked previously as a customer service representative (Tr. 62, 67). Plaintiff alleges disability as a result of Carpal Tunnel Syndrome ("CTS") (Tr. 61).

### A. **Plaintiff's Testimony**

Plaintiff testified that she currently lived with her sister in Saginaw, Michigan (Tr. 240). She indicated that her income was limited to a disability retirement and food stamps for a total of $599 each month (Tr. 241). Plaintiff, a high school graduate, stated that she had not worked since May, 2002 as a result of "severe pain and numbness" in her left hand as well as numbness in her right hand (Tr. 241).

Plaintiff reported working for the past 15 years as a customer service representative, describing her job as "eight hours a day of keyboarding" (Tr. 241-242). She stated that in 2000, she underwent surgery on both arms, but within the next year, began to experience

elbow and lower arm pain (Tr. 242). She testified that her surgeon gave her the work restrictions of "limited repetitious hand movement, no keyboarding, and the weight restriction of ten pounds" (Tr. 243).

Plaintiff reported that she attended church each week and socialized regularly, but did not participate in clubs or organizations (Tr. 243). She indicated that she split housekeeping chores with her sister, adding that in conformance with her surgeon's advice she sought to "pace" her activities and did not attempt to lift more than ten pounds (Tr. 243-244). She estimated that her arm problems limited her to "30 to 45 minutes" of activity (Tr. 243). She reported that pain medication, which she took only when she wanted to sleep, created drowsiness (Tr. 244). She denied any problems sitting, standing, or walking, but indicated that reaching overhead, along with pushing and pulling, created discomfort (Tr. 245). She indicated that she experienced an unimpaired ability to perform fine manipulations, but experienced difficulty gripping (Tr. 246). She testified that she was able to type or write for up to 20 minutes before requiring a rest of at least one hour (Tr. 248-249).

Plaintiff admitted that she continued to drive regularly for errands and socializing (Tr. 245). She indicated that she continued to read and watch television, adding that her monetary limitations precluded attending movies or concerts on a regular basis (Tr. 247). She characterized her energy level as "low" as a result of her "living conditions and . . . financial situation" (Tr. 246). She reported taking anti-depressant and anxiety medication (Tr. 246).

    **B.    Medical Evidence**

    **i.  Treating Sources**

In March, 2000, nerve conduction studies showed the presence of bilateral CTS (Tr. 156). In May, 2000, Plaintiff underwent right carpal tunnel release (Tr. 155). Notes from later the same month indicate that she experienced an improvement in symptoms (Tr. 154). In July, 2000, she underwent left carpal tunnel release (Tr. 153). An EMG study performed in May, 2002 showed "mild to moderate left median nerve dysfunction . . . . consistent with . . . recurrent carpal tunnel syndrome" (Tr. 150). In June, 2002, Lawrence LaLonde, M.D. prescribed occupational therapy (Tr. 106). The next month, Plaintiff reported occasional numbness, but admitted that she continued to sew (Tr. 145). LaLonde opined that surgery was not advisable (Tr. 145). David A. Wiersema, D.O. noted that EMG studies performed the same month did not account for Plaintiff's alleged symptoms, recommending continued conservative treatment (Tr. 130).

In June, 2002, a rehabilitative analysis concluded that unless voice activated software were implemented, Plaintiff's CTS would prevent her from returning to her former work (Tr. 211). In March, 2004, Adam Kandulski, M.D. noted that Plaintiff's symptoms of CTS had remained unchanged, but that her hand grip had decreased (Tr. 181). In July, 2004 Plaintiff told Kandulski that she experienced relief from wrist splints (Tr. 180). November, 2004 EMG studies showed a "mildly abnormal study" with essentially unchanged findings from studies performed the previous year (Tr. 214).

### ii. Consultive Sources

In August, 2003, A. Weiss, Jr., M.D. noted that Plaintiff had undergone surgery for

CTS in 2000 and after "a pretty good recovery," experienced a relapse in May, 2002[1] (Tr. 119). He noted a right grip of 75 pounds, right pinch of 14 pounds, left grip of 65 pounds, and left pinch of 14.5 pounds, but found Plaintiff negative for Tinel's sign and Phaleh's sign (Tr. 119). Weiss, noting the presence of muscle atrophy, prescribed conservative treatment which included anti-inflammatory medication and wrist splints (Tr. 120). He concluded by cautioning that Plaintiff "to make sure she doesn't have a factory job where she has to do cutting or shaving of parts, no filing or rasping, no vibratory tools or hammering, no sustained gripping or pinching and no heavy lifting" (Tr. 120). In December, 2004, Weiss again examined Plaintiff, noting that she experienced relief from using wrist splints (Tr. 233). Characterizing her condition since her last exam as "unchanged but stable," he noted that Plaintiff would eventually "probably have to have surgery done" (Tr. 233).

An August, 2003 psychological assessment by G. Pestrue, Ph.D. notes that Plaintiff reported that she was unable to perform heavy lifting, wash walls, or scrub floors (Tr. 121). Plaintiff characterized herself as depressed since January, 2003 when she found out that she would be unable to return to her former employer, but added that she maintained good relationships with her neighbors and a number of close friends (Tr. 121, 123). Pestrue assigned Plaintiff a GAF of 50[2] (Tr. 126).

---

[1] Although the ALJ characterizes Weiss as a treating source (Tr. 22), Plaintiff testified at the administrative hearing that Dr. Weiss was a "consultant" who examined her on only two occasions (Tr. 242-243, 248).

[2] A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social,

Based on the August, 2003 exam, a Psychiatric Review Technic ("PRT") performed the next month showed the presence of an affective disorder (Tr. 168-169). The report found "mild" limitations in activities of daily living and social functioning with "moderate" limitations in maintaining concentration, persistence, or pace (Tr. 170). A Mental Residual Functional Capacity Assessment performed at the same time found that Plaintiff's ability to understand, remember, and carry out detailed instructions was "moderately" limited, along with a "moderately" limited ability to perform activities within a schedule (Tr. 172). The report deemed all other workplace limitations not significantly limited (Tr. 173). An accompanying consultation form states that Plaintiff denied depression as of May, 2003 (Tr. 176). A September, 2004 consultive exam on behalf of Plaintiff's former employer noted the absence of muscle atrophy or present symptoms of CTS (Tr 230).

### C. Vocational Expert Testimony

VE Mary Williams classified Plaintiff's former work as a customer service representative as semi-skilled at the sedentary level of exertion (Tr. 250). The ALJ then posed the following hypothetical question:

> "Assuming an individual of . . . .Ms. Kinne's age, vocational, educational background, light level of exertion but she'll be precluded from more than occasional handling gripping or fingering. She'd be precluded from any forceful, any forceful gripping and no repetitive reaching or overhead work. Reaching either overhead or forward. Reaching period. No past work – would there be, in other words, such person could perform?"

---

occupational, or school functioning," such as inability to keep a job. *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)* 34 (4th ed.2000).

(Tr. 251). The VE found that given the above restrictions, Plaintiff could perform 1,700 jobs existing in the regional economy (Tr. 251). The VE testified further that given the above restrictions, none of Plaintiff's skills were transferrable to the sedentary exertional level (Tr. 251).

### D. The ALJ's Decision

Citing Plaintiff's medical records, the ALJ found Plaintiff's that severe impairments included chronic bilateral CTS, determining however that the impairment neither met nor equaled any impairment listed in Appendix 1 Subpart P, Regulations No. 4 and No. 16 (Tr. 22).

The ALJ concluded, citing the VE's testimony, that Plaintiff was unable to perform her past relevant work either as actually done or as "customarily performed" (Tr. 22). However, based on Plaintiff's age, education, and work experience, he found that she retained the residual functional capacity ("RFC") to perform

> "a significant range of light work activity and retains the ability to occasionally finger and occasionally handle, but is precluded from forceful gripping and from repetitive overhead reaching or working overhead"

(Tr. 22). The ALJ determined that based on the VE's testimony, Plaintiff could perform the job of information clerk (Tr. 23). He found Plaintiff's allegations of complete disability "not totally credible" by noting that she continued to perform housework, shop, attend church, sew, manage her finances, and work on the computer for short periods (Tr. 24). The ALJ noted that Plaintiff's medical records did not support her contention that she was unable to lift more than 10 pounds (Tr. 24).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In

evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### The Hypothetical Question

Plaintiff premises her argument for remand on the basis that the hypothetical question posed to the VE impermissibly omitted work related limitations as found in the September, 2003 Psychiatric Review Technique ("PTR") and Mental Residual Functional Capacity Assessment. *Plaintiff's Brief* at 6-11. Citing *Varley, v. Secretary of Health & Human Services*, 820 F.2d 777, 779 (6th Cir. 1987), she submits that the failure to include "moderate" pacing deficiencies into the hypothetical limitations invalidates the ALJ's ultimate non-disability finding. *Id.*

In *Varley v. Secretary of Health & Human Services,* 820 F.2d 777, 779 (6th Cir. 1987) the court held that "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question

accurately portrays plaintiff's individual physical and mental impairments." (internal citations omitted).

First, the present record, which strongly suggests that Plaintiff's symptoms of depression were mild and of short duration, amply supports the hypothetical question's omission of the work related limitations found by the PRT and Mental Residual Functional Capacity Assessment. Moreover, the ALJ explicitly rejected the above findings along with other non-treating sources in favor of the opinions of Plaintiff's treating physicians (Tr. 22, ¶4). Further, the ALJ thoroughly discussed the consultive mental exam by Dr. Pestrue which precipitated the PRT and RFC non-examining assessments, noting that although Pestrue assigned Plaintiff a GAF of 50, her depression was diagnosed as "single episode" (Tr. 19). The ALJ pointed out further that during the exam Plaintiff "demonstrated ability to think and speak in abstract terms and displayed fair judgment," along with good hygiene, and a "friendly and cooperative manner" (Tr. 19).

Next, despite Plaintiff's closely related argument that ALJ erred by neglecting to include depression among her severe impairments at Step Two of his analysis, substantial evidence also supports this omission. The Step Two analysis is performed pursuant to 20 CFR § 416.921(a), which defines a non-severe impairment as one that does not "significantly limit [the] physical or mental ability to do basic work activities." The same regulation defines "basic work activities" as "understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting." *Id.* As discussed

thoroughly by the ALJ, Plaintiff exhibited good interpersonal skills, acknowledging that she enjoyed a network of friends, shopped, attended church, performed household chores, and sewed (Tr. 19, 21, 23-24). Neither Plaintiff nor any of her treating sources suggested that depression placed significant or long term limitations on her work abilities.[3]

Finally, on a related note, even assuming that record evidence supports Plaintiff's conclusion that at some point Plaintiff experienced full-blown depression, creating workplace limitations, substantial evidence supports the conclusion that her mental condition did not meet the durational requirements necessary for a disability finding.[4] Plaintiff's May 2, 2003 application for benefits alleges disability solely on the basis of CTS (Tr. 61). In August, 2003, Plaintiff told Dr. Pestrue that she had been "depressed from the first of the year . . . [.] That's when I found out it was very unlikely that I would be able to go back to work with my

---

[3] Of course, the Court is mindful that at Step Two of the analysis an impairment can be considered "not severe . . . only if the impairment is a 'slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience.'" *Farris v. Secretary of HHS*, 773 F.2d 85, 90 (6th Cir. 1985); *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir.1984). Notwithstanding the fact that the condition in question faces only a "*de minimus* hurdle" to qualify for inclusion as a "severe" impairment at Step Two, in this case, as discussed above, substantial evidence supports the omission of depression. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).

[4] 42 U.S.C.A. § 423 (d)(i)(A) defines disability as the " inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months. . ." *See also, Foster v. Halter,* 279 F.3d 348, 354 (6th Cir. 2001); 20 C.F.R. § 404.1520(e) (The claimant must meet the durational requirement to establish disability).

previous employer" (Tr. 121). In September, 2004, Plaintiff reiterated to a consultive examiner that her "chief complaint" was symptoms of CTS (Tr. 228). Significantly, at the same examination, although Plaintiff named depression as one of a series of conditions making up her past medical history, she did not allege any constraints on her activities as a result of depression that could be construed as workplace limitations (Tr. 228).

The conclusion that Plaintiff's depression did not meet the 12 month durational requirement is further supported by her acknowledged level of functioning. Despite the fact that Plaintiff testified at the 2005 administrative hearing that she continued to take anti-depressant and anxiety medication, her testimony, along with other portions of record evidence, indicated that she regularly performed errands; personal and household tasks; and maintained tight-knit friendships with a number of former co-workers (Tr. 223, 246). Although Plaintiff stated as a general proposition that her financial constraints created anxiety and "very low" energy, she did not allege workplace limitations as a result of depression at any time prior to the administrative decision. Significantly, despite the August, 2003 finding of single episode depression, I note the absence of any mental health treatment in the transcript.

Although Plaintiff clearly experiences some degree of limitation as a result of CTS, as a whole, the record points strongly to a finding of non-disability. The administrative decision is well within the "zone of choice" accorded to the fact-finder at the administrative level. Pursuant to *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc), the ALJ's decision should not be disturbed by this Court.

# CONCLUSION

For the reasons stated above, I recommend that Plaintiff's Motion for Summary Judgment be DENIED, and Defendant's Motion for Summary Judgment GRANTED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                             s/R. Steven Whalen
                                             R. STEVEN WHALEN
                                             UNITED STATES MAGISTRATE JUDGE

Dated: May 23, 2007

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on May 23, 2007.

s/Susan Jefferson
Case Manager
